## Case No. 8,294.

### The LEVI ROWE.

[Blatchf. Pr. Cas. 373; 20 Leg. Int. 229.] 1

District Court, S. D. New York. June 29, 1863.

PRIZE—VIOLATION OF BLOCKADE.

On further proofs. vessel and cargo condemned for an attempt to violate the blockade.

In admiralty.

BETTS, District Judge. This suit was brought to hearing in January term last [Case No. 8,293] upon the preparatory proofs theretofore taken therein, and on the ship's papers and the documents captured with her at the time of her seizure as prize, no claimant having intervened in her defence. It was then considered by the court that the evidence presented against the prize, on the part of the libellants, was inadequate in law to authorize the condemnation prayed for. The court, being thereupon moved by them, made an order that they have one year from that time within which further evidence might be presented by them to the court "as to the point or place of the capture, and also as to the purpose of the voyage, and such other or further proof as they may be able to produce." The libellants, in pursuance of said order, took, before one of the prize commissioners of this court, on the 10th day of June instant, the deposition of Samuel B. Hoppin, an assistant surgeon in the United States navy. He testifies that he was on board of the United States gunboat Mount Vernon, being attached to her, about the 29th of November, 1862, and witnessed, at that time, the capture of the above prize by said gunboat; that the capture was made off New Topsail inlet, off the coast of North Carolina; that, when taken, the prize was heading or running directly into Old Top-

sail inlet, which then bore west about four miles; that New Topsail inlet, at the time of boarding and seizing the schooner, bore northwest by north, from three to three and one-half miles; that the prize was, when discovered, heading, with a fair wind, directly into New Topsail inlet; that, as soon as she saw the Mount Vernon, she went about, and headed out from the shore; and that, after the capture, he had several conversations with the supercargo of the vessel, captured in her, who told him that he was aware of the blockade, and had run the blockade of Charleston and Wilmington several times, and that the schooner intended to run the blockade into Wilmington. The further proofs so furnished in the case show conclusively the illicit character of the voyage upon which the schooner was engaged at the time of her capture. A decree of condemnation and forfeiture must, accordingly, be entered against the vessel and her cargo.